UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEVIE MILES, §
    Plaintiff, §
 §
v. § Civil Action No. 3:16-CV-1013-N-BK
 §
NANCY BERRYHILL, §
Acting Commissioner of Social Security, §
    Defendant. §

# FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3*, this case has been referred to the undersigned for a recommendation on Plaintiff's *Motion for Summary Judgment*. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 14, be **GRANTED**, Defendant's *Motion for Summary Judgment*, as construed from her response brief, Doc. 16,[1] be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings.

## I. BACKGROUND[2]

**A.**     **Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for disability insurance benefits under the Social Security Act ("the Act"). In August 2011, Plaintiff filed for benefits, claiming that he became disabled in July 2009. Doc. 11-3 at 21; Doc. 11-4 at 2; Doc. 11-6 at 2. Plaintiff later amended his onset date to August 2011. Doc. 11-6 at

---

[1] Defendant's counsel did not comply with the Court's *Scheduling Order*, Doc. 12, which required Defendant to file a cross-motion for summary judgment 30 days after Plaintiff filed his summary judgment motion.
[2] The following background comes from the transcript of the administrative proceedings, which is located at Doc. 11.

46. His application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 11-3 at 4-7; Doc. 11-3 at 18-28; Doc. 11-4 at 3; Doc. 11-5 at 3; Doc. 11-5 at 9.

**B.     Factual Background**

Plaintiff was 43 years old on the date of his alleged onset of disability. Doc. 11-3 at 27; Doc. 11-6 at 2. He had graduated from high school and had past relevant work as a tractor trailer driver, material handler, forklift operator, tank truck driver, and hostler. Doc. 11-3 at 27; Doc. 11-3 at 69-70. In August 2011, Plaintiff reported having bilateral lower extremity heaviness, fatigue, cramping, aching, pain, skin discoloration, and swelling. Doc. 11-8 at 3, 5. Dr. Charles Rodman, M.D. conducted a venous ultrasound of Plaintiff's legs which demonstrated no deep vein thrombosis, but did show venous insufficiency. Doc. 11-8 at 3-4. The same day, Plaintiff reported that the varicose veins in his legs were worsening and he was experiencing pain, itching, and burning, despite elevating his legs several times daily for six months, and his ability to do chores and exercise had diminished. Doc. 11-8 at 5. Examination revealed bruising indicative of subcutaneous rupture and chronic edema in both legs. Doc. 11-8 at 6.

In August 2011, Dr. Shaad Bidiwala, M.D. examined Plaintiff to assess his low back pain. Doc. 11-8 at 13. Plaintiff exhibited slightly reduced strength, reduced sensation in his right leg, and no Achilles reflex, and he had positive straight leg raise test on the right. Doc. 11-8 at 14. Dr. Bidiwala also observed that Plaintiff walked with a slow, antalgic gait. Doc. 11-8 at 14. The doctor reviewed an MRI of Plaintiff's spine and determined that surgical intervention would not be prudent, but he recommended that Plaintiff lose weight, as he weighed 440 pounds and had a BMI of 51.03. Doc. 11-8 at 15; Doc. 11-8 at 34. In September 2011, Plaintiff had no

signs of edema, and he exhibited full range of motion and strength in all of his extremities. Doc. 11-8 at 42.

That same month, Dr. Robin Rosenstock, M.D., a state agency medical consultant, opined that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, and sit/stand/walk for six hours in an eight-hour workday. Doc. 11-8 at 21. Dr. Rosenstock concluded that Plaintiff could occasionally climb ramps and stairs, stoop and crouch, and could frequently balance, kneel, and crawl. Doc. 11-8 at 22. At the reconsideration level, Dr. Yvonne Post, M.D. opined that Plaintiff's venous insufficiency, edema, obesity, lumbar degenerative disc disease, and antalgic gait limited Plaintiff's ability to stand and walk to only two hours in an eight-hour workday. Doc. 11-8 at 59.

In October 2011, Dr. Robert G. Cynar, M.D. ordered a chest x-ray which revealed that Plaintiff's heart size was in the upper limits of normal and he had pulmonary vascular congestion. Doc. 11-9 at 65. In July 2012, Plaintiff reported to the emergency room complaining of a headache. Doc. 11-10 at 5. Examination revealed bilateral lower leg edema and varicose veins, but Plaintiff had normal range of motion and no tenderness. Doc. 11-10 at 6.

Plaintiff next saw Dr. Oladele Olusanya, M.D., in February 2014 as a new patient, reporting hypertension and back pain. Doc. 11-9 at 37. Dr. Olusanya noted that Plaintiff also had degenerative disc disease and recommended that he follow up with his orthopedic physician, but he did not recommend back surgery. Doc. 11-9 at 38. The doctor additionally instructed Plaintiff on a weight loss and exercise plan and asked him to come in for a follow up visit in a month. Doc. 11-9 at 38.

In April 2014, Plaintiff saw Dr. Jay Bhatla, M.D., at the SpineCare Institute for low back pain, which Plaintiff complained was ten in intensity on a one-to-ten scale. Doc. 11-8 at 68. He

weighed 455 pounds, was tender upon palpation of the lumbar spine, had distal edema, and walked with a cautious gait; but he exhibited normal strength, had a negative bilateral straight leg raise test, full strength in all extremities, and no deficits in sensation. Doc. 11-8 at 68-69. Dr. Bhatla noted that an MRI of Plaintiff's spine taken in February 2013 revealed posterior spondylosis and facet arthropathy throughout the lumbar spine, as well as mild disk degeneration at L5-S1, but no significant canal stenosis. Doc. 11-8 at 69. He administered to Plaintiff bilateral facet joint injections at L3-L4, L4-L5, and L5-S1 levels. Doc. 11-8 at 73.

**C.     The ALJ's Findings**

In September 2014, following an administrative hearing, the ALJ denied Plaintiff's application for benefits. The ALJ found at step one that Plaintiff had not performed substantial gainful activity since the amended onset date of disability. Doc. 11-3 at 23. In considering the severity of Plaintiff's impairments at step two, the ALJ found that he had varicose veins with multi-venous insufficiency of the bilateral lower extremities, swelling of the limbs, stasis dermatitis, morbid obesity, hypertension, a minimal disc bulge at L5-S1, mild facet changes with right lower extremity pain, and an abnormal EKG. Doc. 11-3 at 23. However, at step three, the ALJ found that none of Plaintiff's impairments met or equaled a listed impairment. Doc. 11-3 at 24. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to (1) lift and carry 20 pounds occasionally and ten pounds frequently; (2) stand and walk for two hours in an eight-hour workday; (3) sit for six hours in an eight-hour workday; (4) occasionally climb ramps and stairs; and (5) occasionally kneel, crouch, crawl, balance, and stoop. Doc. 11-3 at 24. The ALJ found at steps four and five of the sequential analysis that Plaintiff could not return to his past work, but he could perform other work in the national economy. Doc. 11-3 at 27. Accordingly, the ALJ concluded that Plaintiff was not disabled. Doc. 11-3 at 28.

4

## D. Evidence Presented to the Appeals Council

In November 2014, after the ALJ issued his decision, Plaintiff submitted to the Appeals Council a "Medical Assessment of Ability to do Work-Related Activities (Physical)" form filled out by Dr. Olusanya. Doc. 11-3 at 11-12. Dr. Olusanya opined that Plaintiff could (1) occasionally lift and carry ten pounds and frequently lift and carry about five pounds due to his muscle weakness; (2) stand and walk for less than two hours in an eight-hour workday due to his congestive heart failure and dyspnea; (3) sit for less than four hours in an eight-hour workday due to his chronic back pain; and (4) never climb, crouch, kneel, or crawl because of his congestive heart failure, edema, and osteoarthritis. Doc. 11-3 at 11-12. Additionally, Dr. Olusanya found that Plaintiff would need to lie down for two hours and elevate his legs for two hours in an eight-hour workday. Doc. 11-3 at 11. Finally, the doctor opined that Plaintiff could not be expected to work more than two consecutive days at a time, and Plaintiff's functioning had been impaired to approximately the same extent he had indicated since at least July 2013. Doc. 11-3 at 12.

The November 2014 treatment notes that accompanied Dr. Olusanya's form chiefly reiterated his prior diagnoses and noted that he had refilled several of Plaintiff's medications, advised him to lose weight, and advised him to see a cardiologist for his congestive heart disease. Doc. 11-3 at 13. The Appeals Council acknowledged the new evidence, but concluded that the "new information is about a later time" since the ALJ issued his decision in September 2014. Doc. 11-3 at 5.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C.

§§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

### III.  ARGUMENT

Plaintiff argues that Defendant's adverse decision is not supported by substantial evidence in light of Dr. Olusanya's November 2014 opinion.  Doc. 15 at 14.  He asserts that the Appeals Council erred by finding that the opinion evidence was not material because it did not relate to the pertinent time period.  Doc. 15 at 18-20.  Plaintiff requests that this Court remand the case because the Appeals Council never considered Dr. Olusanya's opinion on the merits, and the Court cannot itself make the necessary findings about the credibility of medical sources and the weight to give their opinions.  Doc. 15 at 21.

Defendant responds that remand is not warranted for consideration of Dr. Olusanya's opinion because the doctor did not cite to any objective findings or medical testing to support his opinion and did not explain how he had arrived at the conclusion that Plaintiff had been disabled since July 2013.  Doc. 16 at 3.  Additionally, Defendant contends that Dr. Olusanya's "checklist" findings were not supported by reference to any of Plaintiff's medical records.  Doc. 16 at 4-5.  Defendant concedes that Dr. Olusanya's opinion did relate to the period prior to the ALJ's decision.  Doc. 16 at 3-4.  Nevertheless, Defendant maintains that the doctor's findings were not material to the determination of Plaintiff's disability because the outcome would not likely have been different even if the Appeals Counsel had properly considered the evidence.  Doc. 16 at 3-4.  Defendant concludes that any error in the Appeals Council's treatment of the new evidence is

7

harmless because the additional evidence did not outweigh the records the ALJ considered, which showed essentially normal examinations and activities for the relevant time period. Doc. 16 at 5-6.

Plaintiff replies that Defendant has conceded error in failing to properly evaluate and review Dr. Olusanya's opinion, and this Court should not accept her post hoc rationalizations and harmless error defense. Doc. 17 at 2-3. Plaintiff maintains that Defendant's error was not harmless because (1) Dr. Olusanya's opinion that Plaintiff could sit for less than four hours in an eight-hour workday and stand/walk for less than two hours precludes work on a "regular and continuing basis" and directly contradicts the ALJ's finding that Plaintiff could perform these activities at a higher level; and (2) a vocational expert testified that no jobs could be performed if Plaintiff needed to elevate his legs at the frequency opined by Dr. Olusanya. Doc. 17 at 4.

## IV. ANALYSIS

### A. New Evidence

Claimants are free to submit new evidence to the Appeals Council. 20 C.F.R. § 404.968(a). Such evidence is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). The district court must examine all of the evidence, including the new evidence, to determine whether the Commissioner's final decision to deny a claim is supported by substantial evidence. *Sun v. Colvin*, 793 F.3d 502, 510 (5th Cir. 2015). Newly submitted evidence is material if (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003) (per curiam). In this case, only the latter inquiry is in question.

8

### B. Dr. Olusanya's "Checklist" Opinion

The Court finds little merit to Defendant's argument that remand is not warranted for consideration of Dr. Olusanya's opinion because the doctor did not cite to any objective evidence or tests to support his unsupported "checklist" findings. Despite Defendant's argument to the contrary, "check box" opinions are not precluded from consideration simply because of the nature of the form. *See Martinez ex rel T.P. v. Colvin*, No. 12-CV-049, 2013 WL 1194234, at *5 (N.D. Tex. Mar. 7, 2013) (Averitte, J.) (rejecting the Commissioner's assertion that the treating physician's use of a checked-box form undermined the validity of his opinion where the report "added a break down [of] plaintiff's day-to-day functioning that is found nowhere else in the record, in any other form"); *Stevenson v. Astrue*, No. 07-CV-269-N, 2008 WL 1776504, at *3 (N.D. Tex. Apr. 16, 2008) (Godbey, J.) (noting that "there is no authority that requires the court to reject a medical opinion merely because it is in checklist form"); *see also Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007) (remanding case where the claimant submitted a diagnostic checklist from her treating physician, which addressed her symptoms and concluded that she was very limited in her ability to stand and walk, must be able to recline at will during the day, and she experienced severe migraine headaches once or twice a week; noting that no medical evidence was introduced to contradict these findings).

Dr. Olusanya explained on the checklist which condition caused each of Plaintiff's physical limitations, specifically noting his muscle weakness, congestive heart failure, dyspnea, chronic back pain, edema, and osteoarthritis. Doc. 11-3 at 11-12. Moreover, the doctor's findings were supported by other substantial medical evidence in the record, including (1) a venous ultrasound of Plaintiff's legs which demonstrated venous insufficiency, Doc. 11-8 at 3-4; (2) an examination that revealed bruising indicative of subcutaneous rupture and chronic edema

9

in both legs, Doc. 11-8 at 6; (3) a back examination which showed that Plaintiff had reduced strength and sensation, no Achilles reflex, a positive straight leg raise on the right, and he walked with a slow antalgic gait, Doc. 11-8 at 14; (4) a chest x-ray which revealed that Plaintiff's heart size was at the upper end of normal, and he had pulmonary vascular congestion and some calcification of the aortic arch, Doc. 11-9 at 65; and (5) an MRI of Plaintiff's spine which revealed mild disk degeneration as well as posterior spondylosis and facet arthropathy throughout the lumbar spine. Doc. 11-8 at 69. In this light, there is no reason for rejecting Dr. Olusanya's opinion merely because it is in a checklist format.

There have been no findings regarding Dr. Olusanya's opinion and no attempts to reconcile it with other evidence in the record. In fact, Defendant concedes that the Appeals Council did not evaluate the substance of the report at all. Yet, Dr. Olusanya's opinion is material and significant because it is the only opinion of a treating physician that details Plaintiff's work-related abilities. *See Castillo*, 325 F.3d at 551-52. In short, Dr. Olusanya's opinion dilutes the record to such an extent that the ALJ's decision is insufficiently supported. *See Lee v. Astrue*, No. 10-CV-155-BH, 2010 WL 3001904, at *8 (N.D. Tex. July 31, 2010) (Ramirez, J.) (stating that the issue before the court was whether "the new evidence diluted the record to such an extent that the ALJ's determination became insufficiently supported.") (citing *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) (per curiam)).

Furthermore, this Court may not evaluate in the first instance Dr. Olusanya's assessment, the credibility or weight it should be afforded, or the medical evidence relied upon for its creation. That power lies exclusively with the Commissioner. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[T]he reviewing court . . . must judge the propriety of [administrative] action solely by the grounds invoked by the agency. If those grounds are inadequate or

improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). Therefore, remand of this case is warranted for proper consideration of Dr. Olusanya's assessment. *See Nejmeh v. Colvin*, No. 14-CV-816-Y, 2016 WL 642518, at *3 (N.D. Tex. Feb. 18, 2016) (Means, J.) (finding that new medical opinion evidence presented to the Appeals Council was so inconsistent with the ALJ's findings that it undermined the ultimate disability determination, and remand was required so that the Appeals Council could fully evaluate the treating source statement as required by law); *Schaff v. Colvin*, No. 13-CV-304-BF, 2014 WL 1462153, at *3-4 (N.D. Tex. Apr. 15, 2014) (Stickney J.) (same); *Brown v. Astrue*, No. 10-CV-00275-O-BK, 2010 WL 3895509, at *5-6 (N.D. Tex. Sept. 13, 2010) (Toliver, J.), *adopted by* 2010 WL 3895507 (O'Connor, J.) (same); *Lee*, 2010 WL 3001904, at *8-9 (same).

## V. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 14, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, as construed from her *Response Brief* Doc. 16, should be **DENIED**, and the Commissioner's decision should be **REVERSED AND REMANDED** for further proceedings.

**SO RECOMMENDED** on May 6, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE